3-12-0075 The Veteran's Assistance Commission of Helms v. Brett R. Geiger v. The County Board of Grundy County, Illinois, et al. And I have with me Mr. Michael Manning and Mr. Timothy Rathbun. Mr. Geiger? You may. May it please the Court, Counsel? I'd like to thank Mr. Manning for getting involved in the case. I know that we were rushing to get someone in. I'm glad we could have our argument today because it had been continued once before. So thank you for giving us the time to address this case. Would the Court like a brief restatement of the facts of the case? Well, it's your case. Proceed however you feel is the best use of your time. I always like to make myself available to the Court for questions, and I like participating in oral arguments. I know this is factually, I think, not too difficult a case. Legally, it's very interesting, I think, because there's so little precedent in such an old statute. And it's a good opportunity, I think, to clarify what the role is of a county board and a veterans' assistance commission in a county. More or less, I think what this case is about is the autonomy of these veterans' assistance organizations in the counties. And legal determinations that need to be made are about what influence, if any, can a county board have on these veterans' assistance organizations on a county-by-county basis. Having given you the opportunity to chart the course of your own oral argument, now I'm going to interrupt you with a question on the facts. The original VAC formulated with Mr. Monson as the president included the American Legion, the VFW. If I understand correctly, was it like a generic American Legion without a post number? I believe that there is a post number. Or the original VAC? The original. I believe it's agreed in the pleadings and in the stipulation. That all these organizations, all these individual chapters and posts were members of the original or prior VAC, as they're referred to in the briefs. Originally or added as time progressed? I believe that the VAC was formed in 2001. At that time, I do not know if every chapter and post that was a member in 2008 was a member at that time. At the time of Mr. Monson's election, both four years before the election we're talking about in this case, I believe that they were all members. All the relevant chapters and posts were members of the old VAC. Is the beef between the original VAC and the subsequently formulated VAC that delegates have to have been honorably discharged before they get voting rights? Do I understand those facts correctly? I don't think that that is a fact that's been addressed in this case. I think that the argument in this case is whether or not, with the county board's authority or without the county board's authority, whether chapters and posts can, on their own volition or with the county board's permission, separate themselves from one Veterans Assistance Commission and form a new one. Is it agreed that the original VAC was properly formulated? Yes. I don't believe it's ever been disputed that it existed, that it was a Veterans Assistance Commission at the time that the facts relevant to this case occurred. Thank you. Why can some people not vote? I don't believe that there's any indication that specific people were denied a right to vote in the election of Mr. Monson, the most recent one. I thought that was the allegation of why they formed their own group was that they were not allowed to vote on this one. I believe that the ordinance does say that that is the reason, but at trial there was no evidence of it. And there was a prior case that was a quo warranto action that the state had brought against Mr. Monson in the prior VAC that said you're not... That case was dismissed. It was dismissed, correct. There were allegations in that case that dealt with voting rights. And for the court's information, I believe that they were arguing about the bylaws. Because the bylaws had specific requirements of how many meetings you had to attend, what kind of paperwork needed to be presented by the delegates in order to vote. And some of the people felt that they were overbearing, they were too restrictive, that they should not be enforced. But the bylaws themselves, for purposes of arguing the point, had means of amendment. They could be amended, they could be changed within the organization, within the commission. And at the heart of our case, I believe, is that there is ample means to change the commission within the commission, within the bylaws. That you don't need the county board. First of all, I don't think the county board can intervene and change bylaws and remove a superintendent and appoint a new superintendent. I think that the case that's most on point is from this court, which is the Veterans Assistance Will County case. But the county board didn't remove a superintendent. They just withdrew recognition of the original VAC that everybody agrees was properly formed. And they haven't. I don't think they can. The ordinance itself says that they're giving this broad permission to all of the chapters and posts to reform the VAC, which in my mind is a way to strike all the bylaws, to strip all the elected officials of their titles, and then to allow these individual chapters and posts to start from scratch, basically. So the ordinance itself didn't say, Mr. Munson is no longer superintendent, but it more or less said that no one is. And that no one has an elected position in this VAC, and there are no bylaws, because everyone has permission to start from scratch. Your position is that this is a statutory permitted creation. Is that correct? Yes. Okay. So it's under state law, correct? Yes. Okay. And your position is that the only involvement a county board has, or a supervisor, before we had county boards, a board of supervisors probably in the county, the only power they have is the power of the first. Yes. And I think that the statute is slightly older than some that we would see on a day-to-day basis, but the spirit of it is a financial partnership, that the superintendent is supposed to work with the county board and come up with reasonable compensation. But the county board doesn't have to. The county board can say, superintendent, you're being unreasonable, this is not a proper expenditure, we are not going to authorize this expenditure, we're not giving you any money. Right. And the source of your funds of the commission come from either county tax levy, is that correct, county county tax? I believe it comes from the general fund of the county board. Okay. But I believe that the county board has the authority to say, that is an unreasonable expense, or your salary is too high, but they cannot say, we're not going to pay any expenses, and we're not going to pay any salary. Yes, they can, can't they? I don't believe they can. Why do you say that? The case law in the statute itself mandates that the county board fund what is just and necessary for these things. Which is just and necessary. Right. And they can say, this is not just and this is necessary, or is there a county law requiring them to fund it? It requires them to fund it at a reasonable amount. So if the county board cannot agree with the VAC about what is just and reasonable, then it's in the VAC's court to then file an action in court, and the trial court can decide whether or not what they're asking for is just and reasonable. But the county board doesn't have the authority to abolish a VAC or to completely defund it. And I believe there's a case, though I can't think of the full name, Peoria, is one of the parties, I believe, that says you cannot completely defund a VAC specifically for that reason. That would be destroying the VAC, which has a right to exist by virtue of the statute. And I think that that case law in the statute itself mandates some funding. The structure is not the easiest to manage if people are fighting, because the only way for the county board and this VAC to agree, which are both, I think, autonomous entities, is to go to court, and the judge can decide what's just and reasonable. Now, does the record show that this funding, what is the status of the superintendent of the VAC and the office staff of the VAC? Who are the employees of? Well, currently, the superintendent that's our position is Mr. Munson, who's been completely unfunded by the county. So we believe that he is the duly elected superintendent by virtue of the original bylaws. The defendants in the case... So he's not an employee? No, he's a superintendent. I believe he holds that position as a matter of...it's a statutory position created. Correct. And how is his compensation paid for? He's not being paid right now, but he is paid by the county board. The superintendent is compensated by the county board. And they determine what that compensation is? The VAC working with the county board, and I believe that the case law would say that they have to fund him as they would a similar officer in county government with similar duties and similar experience. That's been the way that they've said these things should be resolved, is that if a superintendent in, say, Cook County may be compensated more than a superintendent in Grundy County because there's more veterans, there's more responsibilities, there's a higher level of sophistication needed, and maybe a lower population county, it wouldn't be reasonable. But the statute doesn't say anything specifically. It just says that they must fund a reasonable sum to the superintendent for his duties and responsibilities in the office. And also for office staff? Yes. Doesn't this case really put the cart before the horse because the statute allows for mandamus action if the county board doesn't open up the purse strings when requested? Well, the county board is funding a VAC. They're funding the new VAC under this case. They have refused to acknowledge that there's any authority on behalf of Mr. Munson or the prior VAC that I represent to any compensation whatsoever. So I believe that to get to the crux before we start arguing about specific funds or whether they can be reasonable or unreasonable, and then to file a mandamus, that we need a determination that we in fact have the authority under the law to bind a VAC, that he is the superintendent, that he has standing to do that sort of thing. There is a mandamus motion that has been filed in this case that has been continued indefinitely pending the resolution of this appeal, that's requesting more or less the same things we've asked for in the injunction, which are Mr. Munson's salary, past pay of the employees of the VAC, attorney's fees. For purposes of this appeal, we don't have to decide whether there can be one or more VACs. That's the county board's problem. I think that the issue should be resolved. I think that it may be possible to reach a decision without addressing it, but it may not. I would hope that the court would address it. Was the trial court asked to decide that issue? The trial court was asked to decide who the legitimate VAC is. So I think by implication, if there could be two, that that could be the decision that the court rendered. I hope that the court addresses it, because I think it's important to understanding whether or not my client, Mr. Munson, has any authority to bind any of these individual chapters and posts as a superintendent. For the sake of argument, if there could be two superintendents, then the county board, I believe, would have an obligation to fund both. Probably less, because it would be less reasonable to pay a full salary if there's two people doing the same job. But I'd like to think the statute is fairly clear that there can only be one commission, and in fact the entire purpose of forming one is to make the administration of these expenses easier to manage. Technically, I think that there could be no VAC, and each individual chapter and post could request funding from the county board. Which is why the statute requires a VAC, because it makes it easier for the county board. Yes, and it allows one. I'm not sure if it mandates one. Thank you. But if the purpose of the statute is to consolidate all these chapters and posts to make the administration easier, which I think has already been done, and I think that in this case it was done, there were enacted bylaws, which I believe are binding, on all the individual chapters and posts, but if the decision of the court was there can be more than one, then you could have, I wouldn't even want to hazard a guess, how many superintendents possibly in a place like Cook County, Will County, every two chapters and posts you could have a new superintendent, a new set of bylaws, and someone else applying to the county board. Why is that a problem? Well, I think... Why does there have to be a monolithic organization in every county? I don't suppose there needs to be. Because the statute just permits the formation of a commission. Right. Prior to that, the commander of a post, or the chief officer of a post, or however the organization is composed, could apply to the county. Is that correct? I don't believe there would have been authority for the posts to demand money from the county before the passage of the act, because the statute itself is what permits, or actually what I should say is what requires the county board to provide what is just and necessary funding to the individual chapters and posts. So prior to the enactment of the statute, I'm not sure if there would have been any legal standing for the American Legion to go to the county and demand that they be compensated for... Right, but the statute provides for that. It does. Okay, so let's stay with the statute. The statute provides, if you do not form a commission, that, it says right here, the supervisor of general assistance, or the county board, provides for commanders, quartermasters, commandants, whatever the organizational structure heads are, to draw funds from the county for the assistance needs of veterans and their families. Is that correct? It is. Okay. So, presumably, the statute provides for multiple requests from different organizations in the absence of a commission. It does. And my reading of the statute is that a commission, once voluntary formed, is singular, and it is the entity that the county deals with. Thank you. Mr. Mattingly? That is correct, Your Honor. And my understanding is you'll be taking ten minutes of your time and leaving the balance for co-counsel? That is correct. You may proceed. My name is Michael Mattingly. I am representing the county of Grundy, and also present with me is Mr. Tim Rathbone, who is my co-counsel. He is representing six commandants of veterans organizations in Grundy County. As stated by the court, we'll be splitting our time with respect to this argument. I state to the court that the order of the Circuit Court of Grundy County and the actions of the Grundy County Board should be affirmed as they were a proper use of legislative authority and are allowed under the statute. The statute that we're referring to is the Veterans Assistance Act, 330-ILCS-45. In interpreting the statute, this court should look at the four quarters of the statute and read all parts of it to determine what was the intent of the legislation when the statute was passed. As stated by other counsel, this is an older statute that was passed in 1907. It's been around for over 100 years. It looks to me like it was passed probably to deal with the issue of Civil War veterans. But it has continued to exist and it exists as of today. The purpose of the statute and the primary purpose, and the county recognizes this purpose and wants to serve this purpose, is to provide assistance to veterans who are in need of financial assistance or to their families who are in need of financial assistance or to the families of deceased veterans who are in need of financial assistance. That's the least thing that the county can do to provide assistance to those who have helped and served our country. Under the statute, the county is the funding source for this assistance. It has the power to tax and the power to appropriate the funds for the assistance that should be given. Its guidance under the statute is to provide just and necessary funding when it's needed and how it determines what is just and necessary funding is what information is provided to it from its own sources plus the recommendations from the military veterans' posts in the county or from a veterans' assistance. Can I go to Section 2 of the Act where they talk about just and necessary? That section says the county board shall provide such sums of money as may be just and necessary to be drawn by the superintendent of any veterans' assistance commission. Doesn't that leave room for more than one? I would argue no. It doesn't use the word the. I would argue that you have to look at Section 9 of the statute. Under Section 9, when you go to a veterans' assistance commission, it talks about forming a central veterans' assistance commission in the county. The word a to me suggests that there's only one, and that should encompass all the posts. I'm using posts to cover all the statutory descriptions of those entities that are military veterans' organizations. All posts in the counties then must be members of that veterans' assistance commission and must be able to participate in its formation and its regulation. Is it correct that everybody agrees the original VAC was properly formed? I'm not aware of that, Your Honor. To give an answer to that, I know that it was stipulated that it was formed in 1999 by a group of veterans' organizations in the county, and it was officially recognized by the county in 2002. So there was a period of time in which there was a VAC that wasn't recognized by the county, and when it was recognized by the county in 2002, it was only in 2004 that it began to fund the VAC after recognition. Mr. Mattingly, what's the statutory authority for the county to choose between two VACs? You have to look closely at Section 9 and the statute as a whole, as I was starting, Your Honor. Okay, but explain it to me because I'm not seeing it. In Section 9 of the statute, it says that the groups, the posts, can come together and form a veterans' assistance commission. If they do, their statutory authority to do so says it must be comprised of one delegate and one alternate from each post that are selected annually, and they must have delegates and alternates that are determined by the post, not by the commission, but by the post. Those are the statutory directions in 9 as to what a valid VAC would be. Also, I would point to in Section 9 with respect to the appropriation and distribution of money issues with the county board, the county board has been granted legislative authority to make such rules and regulations that are necessary to govern their distribution and appropriation of funds. That rulemaking authority to me would suggest that they have the ability and the responsibility to make sure that the veterans' assistance commission that they're dealing with in the county is conforming to the statutory requirements of Section 9 of the statute. So the county's position is that regardless of whether the original VAC was properly formed initially, it is not properly organized now because it's not what? Their position is that there was a VAC that was recognized. During 2011, there was a group of veterans' organizations that are organizations in the county as defined by the statute who came to the county and said that they were not being allowed to participate in the existing VAC. What did the county do? It took two courses of action. The county board sent the matter to its committee for further study and determination. That county board committee, after being approached by these gentlemen and these veterans' organizations, had a committee meeting. At that committee meeting, they made inquiry to both the people making the complaint and to the existing veterans' organization. The parties making the complaint said that they were barred from participating in the elections and the annual meetings of the VAC. The party that was existing, the VAC, through its superintendent, refused or did not answer any questions that were posed to it by the county board regarding that issue. Those are stipulated facts. The other course of action the county took... Was the second VAC organized at that point when the members went to the county board? Not at the first meeting where they went to the county board. From my understanding, the first time was in September. The second course of action the county board took with the... or the county, I shouldn't say the county board, the county state's attorney's office took was to go to court and ask for a temporary restraining order with possible injunctive powers restraining the VAC from taking an election that did not include all the members as required by the statute. And what was pointed to at those points, the TRO was issued... That case was dismissed. That case was dismissed, but before the court... And we can't consider the rulings in that case. What was also before the court in that, and before the county board, were the bylaws of the existing VAC. And if you review the bylaws and the provisions of the bylaws, they were restricting members from participating in the vote. That's not before the court here. What is before the court is whether or not the county acted correctly in recognizing one VAC group over the other, and that the basis for making that decision is what was in those bylaws and how the one VAC was... the prior VAC was conducting themselves in front of the others. I would say that the VAC is a unit of local government, as such, as a unit of local government under Judge Dillon's rule as cited in the briefs. It only has the authority that it takes from statute. And I say, if you look at Section 9, it only has those authorities that the legislature has given it, and it can only act if it's composed and comprised of a delegate from every post and an alternate from every post. And that delegate and alternate has to be chosen by that post, not by the VAC or confirmed by the VAC. You're saying that's the first language in Section 9? Correct. So the position is that the county can just defensively say, we cannot, under the prior VAC or the original VAC, we cannot approve assistance because you are not a correctly composed commission. Is that correct? Correct, because if you look at the sentence in that section of the statute under where it says what it has to do, it says only if your VAC is made up of this entity and composed in this manner, do you take the color and authority from the post to operate. And the county in this case found that the existing VAC wasn't allowing certain posts to participate, and in their legislative discretion, then said, well, you're not following the statute, you don't have the color of authority to act, and therefore this group of other posts who are coming in the same way. When you say participate, see, this is the key I'm trying to understand factually. It says here in Section 9 that the commission will be composed of a delegate and alternate from each of the posts, et cetera, et cetera, selected annually by each of those posts, et cetera, et cetera. Okay. That is clear as to how it is to be composed, correct? Correct. Okay. So what beyond that empowers a county to get involved in the commission? The rulemaking authority with respect to distribution of funds, of taxpayer and public funds for which it oversees. And the rulemaking authority allows the county board to determine whether or not it is dealing with a validly comprised VAC, and if it finds that in its legislative discretion it isn't, and it is presented with another group of posts that do so. Okay. Let me take your language apart here. Validly comprised. Yeah. Now what do you see that referring to, validly comprised? Going back to the provisions of Section 9 and the conditions that, one, each post be allowed to have in the county, have a delegate and alternate,  And they did not. That is my understanding. They did not have the delegates and the alternates, or those people are contending that they were not allowed to vote. That is correct. Which is correct? Both. Both are correct? Both. That they were not allowed the delegates, and under the provisions of the existing VAC, the VAC had put in provisions to approve the delegates and alternates that the posts would submit to them. Okay, that's where I think we wanted to get back to actually. And what was the basis on which the exclusions, if you will, were accomplished? What was the rationale for that? The rationale is that you have to be a validly constituted VAC in order to take the public funds from the county. I'm sorry, that's not my question. I wasn't clear. What is the basis for the contention that, no, what was the basis for excluding the various posts who claimed to have been excluded from membership in the VAC? There was something about dishonorable discharge I thought in here, but what was the actual basis? If you go by what was in the bylaws that were presented of the organization to the county board, they could be excluded if they didn't attend three consecutive meetings. That's not provided for in the statute that anyone forfeits their rights to be participating in the VAC if they don't participate in meetings. It's set up under the delegate and the alternate that there had to be on that issue. Yes, there are provisions in this statute that provide that if you're an employee of the VAC, you should be honorably discharged. And if you are receiving benefits from the VAC, you should have been a veteran which has an honorable discharge. But nowhere in the statute is that requirement put in for a person to be a delegate. And you cannot add to that authority if you're a unit of local government. But that was added by the bylaws of the original VAC, and I presume it was voted upon by the members of the original VAC. That I can only presume because that information was not in the record when I received it. If the county board, when the members went to the committee and said, you know, these things are happening and we don't like the way Mr. Monson is conducting the VAC, if the county board says we're staying out of it, we'll withdraw our recognition of the past VAC, the original VAC, and we're not going to recognize the second VAC. Wouldn't you be here saying the county board's recognition or non-recognition has no legal effect and the second VAC could be properly formed? Possibly if that was the legislative decision that the county board took. But that is not the legislative decision that the county board took. The legislative decision that they took was to read the statute and determine that one VAC was not conforming to the statute and the other VAC was saying that they would, therefore they recognized the VAC. But like the VAC, the county board only has statutory authority to act, and it's limited. And the statutory authority of the county board with respect to any VAC, one, two, three, four, is to control the purse tax. Has the county board refused to pay Mr. Monson's request on behalf of his VAC? The county board has recognized one Veterans Assistance Commission and is allocating and appropriating funds for one Veterans Assistance Commission. And like Justice McDade, I can't quite wrap my brain around what you think the county board's authority is to do something beyond closing the purse. A judge can look at the statute and see if Mr. Monson's VAC was properly formed, but why does the county board get to do that? Because it's within their legislative discretion with respect to the rules and regulations that the county has the authority to make with respect to the appropriation and distribution of its funds. Mr. Mattingly, why was the temporary restraining order action dropped? That would seem to have been the appropriate way to deal with this. Your Honor, I'm at a disadvantage on the answer to that. I do not know. I took over in this case a week ago. I don't know the circumstances under which it was. I know that the county, which I'm representing, asked for it to be dismissed. I do not know the background for that. I apologize. I would like to sum up by saying that I believe that what the county did is consistent with all of the case law that is out there on the DAC. If you look at the Ickles case, which is a Supreme Court case, that case recognized that a county board has certain discretionary authorities with respect to its appropriation of funds and has the ability to make rules with respect to the appropriation and distribution of funds. The action the county board took here is consistent with that Ickles case. In the Will County case, you did recognize. Your time is up. We appreciate it. You've done a very nice job of handling our questions. Thank you. Thank you, Your Honor. Yes, please. Rathbun, you're going to have to talk fast. I'll talk real fast. I represent the six individual commanders of the posts that were excluded from the Munson VAC. I'd like to suggest to the court, and with all due respect, that courts are not the only governmental bodies that make factual determinations. And I would suggest in this case the county board made a factual determination that, in fact, the Munson VAC was not validly constituted because it did exclude my clients from participation. How were they excluded? Pardon me, Your Honor? I'm sorry. You go. How were they excluded? They were excluded by not being allowed to participate in the organization and even vote. Your previous questions concerning the discharge papers go back into the issue of what happened to them. The Munson VAC said, We're not going to let you participate. There's a form. I was in the Navy. I had a DD-214. It's a piece of paper that's sitting at my house on a safe. They were requiring veterans to display these before, even though they were the delegates, to the VAC, before they would be allowed to participate in the VAC. They were essentially unilaterally cutting people out. I was going to suggest that the county board made a determination, a factual determination, which they do before every legislative VAC. It's a legislative VAC. We can't say the courts are the only ones who can find facts. The Secretary of State determines if you get a driver's license by appearing before them. The county board makes a determination that monies are needed for roads and highways. Those are factual determinations, and in this case, they made a determination. We point out in our brief that the original VAC, which was formed in 1998, went to the county and asked for recognition. They recognized, the plaintiffs themselves, recognized the county had to see and recognize them. The county took an action. It recognized them, and then just like any county board, elected representatives, they got the opportunity to decide to recognize that VAC, and they decided later on and made a decision, a legislative decision, that they were going to vacate that, and they did. That's what the resolution said. We withdrew that resolution, and we recognized someone else. Under the theory of the plaintiff, you have to let Mr. Munson's VAC exist in perpetuity, taking taxpayer's monies for an unelected group. Even in the steel abatement district has its members appointed by the county board elected officials. In this case, according to the plaintiff's theory, any group of people can get together, and they can be entitled to as much money as they want in perpetuity without any elected body saying no. I don't think that's the way we operate. If it is a unit of local government, as Justice Litton has decided in the Will County case, and in Munson 1, if you will, the case that was decided three years ago, then in that case, I think the only consistent thing you can say and conclude is that the county board has the authority to recognize a VAC and made a decision in this case, and whether it was right or wrong, I don't believe that we can take a contrary position. I also disagree. I think I would suggest one thing to the court. Judge Marcellia made a decision in this case on a temporary restraining order request under the original complaint. The amended complaint is hardly different from the original complaint. All they do is add facts. I think if you look carefully at Judge Marcellia's decision, you can also see why, and maybe form the same conclusion, that there were very good valid reasons for the county board to decide to recognize a reorganized VAC, the VAC that my clients created and were recognized by the county. This reorganized VAC has a delegate and an alderman from every constituted veterans organization in the county. The Munson, as it exists today, and this isn't necessarily part of the record, but as it exists today, the Munson chapters have not participated, but they have the opportunity to participate by sending a delegate, voting, and participating. Why don't we just let the VACs work this out? The problem is the exclusion of my posts. If my posts hadn't been excluded, you would think democratically that would occur. But it hadn't democratically occurred, and it was recognized by the county board that it didn't, and to a certain extent recognized by Judge Marcellia that it didn't. Why are they recognizing the new one? You just told me that apparently doesn't comport with the statute either. Actually, it does, Your Honor. When you read Section 2 and Section 9, if you read them totally looking separately, you'll see some language which indicates that there could be one VAC, only exclusively one VAC, and then you look at Section 2, and you see that there's a VAC. I'm not talking the number of VACs. I'm saying that the statute in 9 says a VAC has to be composed of a delegate, an alderman of every, every post. Actually, I think that if I – And you just told me that's not true. Your Honor, they are members if they choose to. You can't force the American Legion of Mazan to send a representative and participate in the committee. You can't force a county to recognize one that wasn't composed of a delegate, an alderman of every post in the county? No. That's where you get into Section 2, because if you look at Section 2, it speaks in disjunctive. Section 2 says the county shall fund individual posts or a VAC. It doesn't say all or a VAC in the absence of the existence of a VAC. It doesn't give the exclusive authority. I think one could barely read Section 2 to say that they can fund individual posts or a Veterans Assistance Commission. The word any certainly implies that there could be more than one. These aren't perfectly written statutes, Your Honor. No, but 9 talks some language called duties thereto for devolving upon. That's correct, Your Honor. Which drops the curtain on those individual ones, doesn't it? That would be – that's the arguments of the plaintiffs. We say you have to read a statute to be able to – you try not to read any words out of the statute. You can't – to read Section 2 and Section 9 together is difficult. That's why we have this dispute, is because does or mean disjunctive? Does any mean more than one? And does heretofore mean it doesn't – anything they don't have any rights prior to that? And I don't suggest that you have to form that conclusion, Your Honor. Well, it's not heretofore. There is a difference. I'm sorry. Theretofore. Theretofore, I'm sorry. It's a different tradition, heretofore. Yeah. Okay, one more question. Can a VAC exist without every organization? Doesn't the statute just say one or more? It does say one or more. And I would think that every – you don't have to have the participation of every single member to have a VAC. The Munson VAC certainly operated without that for a long period of time. So the present VAC could, too, as well. We all would hope that there would be – that this problem wouldn't have occurred and we wouldn't be before the court. But we don't get to choose the facts that bring us in this building. Thank you. Thank you. Mr. Griggs? Geiger, sorry. I need trifocals rather than bifocals. I'd just like to use my remaining time to address first a few factual issues that have come up, I think, a couple times during the argument. If you look at the stipulation, stipulation number two resolves the issue, I believe, of the existence of the prior VAC. Stipulation number two says it did exist. It was enacted according to the statute. Stipulation five, in fact, confirms that bylaws had been enacted by that existing VAC and were in full force in effect. So both of those things, I think, were agreed by the parties before proofs were even introduced at trial, so that there was a VAC in existence and there were bylaws. A lot of these issues, I think, we're struggling with are really asking the question, can a VAC enact bylaws that have certain responsibilities and duties that are put upon the various chapters and posts that are a part of this central commitment, the central VAC? There's been a lot of argument about the fact that they weren't allowed to vote. First, and I think as I argued in my brief, I don't believe there's any evidence at all in the record about people being restricted or not being let vote. But it certainly was included in a lot of the arguments in the briefs, which I believe is improper because it's not supported by the facts in the record. But secondly, they're arguing that the bylaws are too oppressive and that they should not be enforceable when, in fact, these were bylaws that were enacted by the individual chapters and posts. And they've complained that they shouldn't have to present evidence that they were honorably discharged, which I think is perfectly reasonable given the fact that they can't even give benefits to people unless they can prove that. So I think the statute requires that someone to get help from this VAC be honorably discharged, and they're saying it's unreasonable to require the same thing of the delegates that are voting on the board, that are setting policy for this organization. I don't think that's oppressive. The second thing is that they have to attend 10 meetings a year, and if they don't attend 10 meetings a year, they lose their voting rights. Could it be less restrictive? Yes. Could it be more restrictive? I suppose. But they voted for it. Those are the bylaws. And if they want to change the bylaws, the organizations themselves can do it. If they're being unfairly kept from voting because they're not violating the bylaws, or for some reason they're not being allowed to amend the bylaws and someone has actually seized control of this organization that cannot be changed, then the proper avenue is the initial case that was filed. And the determination should not be made by the county board. They say that the judiciary should not be the sole judgment of the government, that the legislature can make judgments too, but deciding how much they're going to spend isn't the same kind of judgment as, is this local body of government being administered according to the law? And five minutes of oral statement at the county board is not the kind of process that we want when we're making the determination as to whether a duly appointed statutory government officer is properly maintaining his office and doing what he's supposed to do according to the statute. That's a decision for a judge to make. That's not a decision for a legislature to make. And there isn't any authority in the statute for the county board to do it anyway. If, in fact, the statute said the county board, if deciding that the VAC is not properly formed, shall be permitted to dissolve the VAC and ask them to reform or something, then we wouldn't have an argument. Then it would be clear from the statute that the county board has that kind of broad supervisory authority. But they don't. It only allows them to set procedures about how money is dispersed and decide how much money is going to be dispersed. I'm not sure that I totally agree with that. It seems to me that if, in the face of two VACs, the county board would have the ability to look at both of the VACs and determine whether or not one or the other was properly organized, so organized as it says in the statute, because they only have to give money to the veterans who are represented by one of those. So it seems to me that they have the authority to make the determination who to pay. I don't think recognizing one or the other lies within their authority. And I think that probably if they acknowledge that it existed but they were not going to pay, then possibly the appropriate remedy would be to file a manumiss action and not to argue that, in fact, the county board needs to recognize that organization. On the issue of the election that took place, the most recent election in which Mr. Munson was elected superintendent, I would just add that there was evidence that everyone, all the chapters and posts, were aware that the election was taking place. The new VAC decided to hold their own election to appoint a superintendent. They did not attend the prior VAC's election in which Mr. Munson was successful. So to a large extent, I believe these arguments of exclusion aren't relevant because they didn't show up, and I think it's uncontested that they were not denied the right to vote in the most recent election, which took place and resulted in the election of Mr. Munson. What is the length of the term of the superintendent? I believe it's four years. Is that provided by the bylaws? By the bylaws, yes. And there's also provisions in the bylaws to terminate the superintendent's position early with sufficient votes from the chapters and posts. Thank you for your time. Thank you. We thank you all for handling the peppering of questions from the panel. All three of you did a very good job of representing your clients. We appreciate that. We'll be taking the matter under advisement and rendering a decision hopefully without undue delay.